# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:21-cv-84-FDW
# (3:15-cr-220-FDW-DSC-2)

| | |
|---|---|
| LAVON M. WILLIAMS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

**I.     BACKGROUND**

Petitioner was charged in the underlying criminal case with: Count One, conspiracy to distribute and to possess with intent to distribute a mixture and substance containing a detectable amount of marijuana, and 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana was attributable to and reasonably foreseeable by Petitioner (21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)); and Count Two, money laundering conspiracy (18 U.S.C. § 1956(a)(1)(B)(i), 1956(h)). (3:15-cr-220 ("CR") Doc. No. 30) (First Superseding Indictment); see (CR Doc. No. 18) (Information Pursuant to 21 U.S.C. § 851).

Petitioner pleaded guilty without the benefit of a plea agreement. A United States Magistrate Judge conducted a plea hearing pursuant to Rule 11 at which Petitioner was represented by counsel. See (CR Doc. No. 106). Petitioner stated, under oath, that he wanted the Court to accept his guilty plea to both counts; he understood the charges, his sentencing exposure, and the consequences of pleading guilty; he understood the rights he was waiving by pleading guilty; and

1

he was pleading guilty because he is guilty. (CR Doc. No. 106 at 6-11). He also stated that he read the written Factual Basis, understood it, and agreed with it. (CR Doc. No. 106 at 11). Petitioner stated that he had spoken to counsel about how the U.S. Sentencing Guidelines might apply to his case, had enough time to discuss any possible defenses with his attorney, and was satisfied with counsel's services. (CR Doc. No. 106 at 8, 12). Petitioner stated that nobody threated, intimidated, or forced him to plead guilty, and that nobody has made any promises of leniency or a light sentence other than the terms of his Plea Agreement, to induce him to plead guilty. (CR Doc. No. 106 at 11-12).

The written Factual Basis provides in relevant part:

> HSI is investigating an organization that is utilizing commercial aircraft to transport marijuana and bank accounts to launder suspected drug proceeds. Law enforcement has seized marijuana and/or U.S. currency from six members of this organization, including currency from Defendant Lavon M. WILLIAMS.
>
> The investigation, including airline travel records, revealed that Lavon M. WILLIAMS, Thajuan BROWN, Sierra MARTIN, and others were acting as couriers for the organization, having together made a total of at least 50 trips from Charlotte, North Carolina to San Francisco, California. Almost all of the return flights to Charlotte were made the next day and the couriers almost always checked in two suitcases for each flight. Travel records from U.S Airways revealed that Lavon WILLIAMS traveled back and forth from Charlotte, North Carolina to San Francisco, California at least eleven times just from April 1, 2014 through March 17, 2015, traveling back to Charlotte with two checked bags. Travel records also revealed that WILLIAMS also traveled back and forth from Charlotte to Phoenix, Arizona on at least three occasions during that same time period. Most of the airline tickets were purchased with a credit card in the name of co-conspirator Toccara KING.
>
> The conspiracy involved the laundering of drug proceeds through bank accounts of numerous individuals. Many of the transactions generated "back room" currency transaction report (CTR) by the financial institutions, even though the deposits and withdrawals were structured to be below the $10,000 threshold to avoid the creation of a normal CTR, which could alert law enforcement from detecting illegal activity.
>
> On February 4, 2015, Thajuan BROWN was arrested at the Charlotte Douglas Airport when he returned from San Francisco with two suitcases

containing approximately 21 kilograms (approximately 46.2 pounds) of marijuana. State search warrants were obtained for the phones seized from BROWN and the phones were found to contain information that demonstrates he and other suspected members of the organization are involved in marijuana trafficking. The information obtained from the phones includes but is not limited to pictures and videos of U.S. currency and marijuana, text messages referring to marijuana, and numerous contacts, some of which contained slang words for marijuana. Additionally, there were multiple text messages between one of BROWN's phones and phones belonging to other suspected members of the conspiracy, including Defendant Lavon WILLIAMS that are related to airline travel.

On February 10, 2015, HSI and the San Francisco Police seized $56,950 in U.S. currency from Sierra MARTIN and $40,000 in U.S. currency from Lavon WILLIAMS, which was hidden within their suitcases when they traveled together from Charlotte, North Carolina. A credit card in the name of KING was used to purchase the airline tickets and a subsequent search (via Federal search warrant) of one PIERRE BUISSSERETH's phones revealed that the phone contained a screen shot of the confirmation code associated with the airline tickets.

When law enforcement approached WILLIAMS at the airport on February 10, 2015, he denied travelling with MARTIN and stated that he was a barber who was traveling to San Francisco for a week to meet friends whom he would not identify. WILLIAMS advised that everything in his suitcase belonged to him and gave consent to search. When law enforcement asked him about the women's shoes found in the suitcase, WILLIAMS advised they belonged to his traveling companion MARTIN. Law enforcement removed a large white vacuum bundle sealed bundled that was found inside a coat, located in WILLIAMS' suitcase. When asked what was in the bundle, WILLIAMS did not respond but was sweating profusely and twitching around the eyes. When law enforcement told WILLIAMS it appeared to by currency, WILLIAMS advised that it was his and that it was $10,000. A narcotics detection dog alerted to the bundle, which was later opened and found to contain a large amount of U.S. currency with a dryer sheet wrapped in a t-shirt. A short time later WILLIAMS abandoned the money.

When law enforcement approached MARTIN at the airport in San Francisco on February 10, 2015, they asked her for the purpose of her trip to which she responded, "I'd rather not say." MARTIN would not answer basic questions about her trip to San Francisco but gave consent to search her suitcase which she advised belonged to her and that she had packed. MARTIN further advised that no one had given anything to her to carry. Upon searching the bag law enforcement observed bulk currency. When asked if the money belonged to her, MARTIN answered, "I was planning on shopping." A further search revealed a vacuum sealed bundle hidden within a dress. When asked if the bundle contained currency, MARTIN did not respond. MARTIN also did not respond when asked if the currency belonged to her or if she was bringing it to someone. Law enforcement also found currency in two separate purses. When asked if she wanted to abandon

the currency MARTIN said yes and stated that she did not need a receipt. Prior to law enforcement seizing the abandoned currency a narcotics detection dog was utilized to screen MARTIN's suitcase, to which the narcotic detection dog gave a positive alert.

On April 16, 2015, as part of this investigation, search warrants were executed at various residences associated with this organization including PIERRE BUISSERETH's which resulted in the seizure of numerous items to include a total of $93,975.00 in U.S. currency. Additionally an I-Phone seized from PIERRE BUISSERETH was found to contain numerous text messages and "screen shot" images that demonstrate he was involved in drug trafficking and money laundering The information obtained from the phone also links PIERRE BUISSERETH to other suspected members of the conspiracy including Lavon WILLIAMS, Sierra Martin, Toccara KING, MAURICE BUISSERETH, Thajuan BROWN, and others.

Bank records indicate that several suspected members of the organization have used their bank accounts to launder drug proceeds. From a sample between 6/25/2012 and 7/14/2015, approximately $463,000 in funds were deposited into the referenced accounts.

(CR Doc. 72 at 1-3) (paragraph numbers omitted).

The PSR includes the information set forth in the Factual Basis. It additionally notes that there is evidence based on relevant conduct and reasonable foreseeability that Petitioner was responsible for at least 400 kilograms but less than 700 kilograms of marijuana. (CR Doc. No. 90 at ¶ 15). The PSR calculated the offense level pursuant to the 2015 U.S. Sentencing Guidelines based on Count Two, the higher of the two offense levels. (CR Doc. No. 90 at ¶ 27). The applicable base offense level was 26 because the underlying offense to the money laundering was drug trafficking, and Petitioner was responsible for more than 400 kilograms but less than 700 kilograms of marijuana. (CR Doc. No. 90 at ¶ 27). Two offense levels were added pursuant to U.S. Sentencing Guidelines § 2S1.1(b)(2)(B) because Petitioner was convicted under 18 U.S.C. § 1956. (CR Doc. No. 90 at ¶ 28). This resulted in an adjusted offense level subtotal of 28. (CR Doc. No. 90 at ¶ 33). However, Petitioner qualifies as a career offender because he was at least 18 years old at the time of the instant offense, the offense is a crime of violence or controlled substance offense, and

Petitioner had at least two prior felony convictions for either a crime of violence or a controlled substance offense, *i.e.*, New York convictions for fifth degree criminal sale of a controlled substance, case no. SCI-N12339-96, and third-degree criminal sale of a controlled substance, case no. N10895-2002. (CR Doc. No. 90 at ¶ 34). The offense level was therefore 37. (CR Doc. No. 90 at ¶ 34). Two levels were deducted for acceptance of responsibility, resulting in a total offense level of 35. (CR Doc. No. 90 at ¶¶ 35-36). Petitioner had 10 criminal history points and a criminal history category of V, however, the criminal history category for career offenders is VI. (CR Doc. No. 90 at ¶¶ 47-49). The resulting advisory guideline range was between 292 and 365 months' imprisonment and eight years of supervised release. (CR Doc. No. 90 at ¶¶ 63, 67).

At the sentencing hearing, Petitioner stated that he remembered the Rule 11 proceeding and did not have any questions about that process. (CR Doc. No. 107 at 9-10). He further stated that he received a copy of the PSR, understood it, and had reviewed it with counsel. (CR Doc. No. 107 at 10-11). Petitioner objected that he did not have adequate prior convictions to support the career offender enhancement and sought a one-level reduction in the offense level for timely accepting responsibility; the Court overruled both objections. (CR Doc. No. 107 at 14-15).

In a Judgment entered on May 25, 2017, Petitioner was sentenced to 292 months' imprisonment for the drug conspiracy, a concurrent term of 240 months for the money laundering conspiracy, and 8 years of supervised release. (CR Doc. No. 99) (Judgment). The Court entered a separate criminal money judgment of forfeiture of $1,500,000 in accordance with 21 U.S.C. § 853. (CR Doc. No. 98).

On direct appeal, counsel filed a brief under <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that there were no meritorious issues for appeal, but raising for the court's consideration whether Petitioner should have received an additional one-level decrease to his offense level for

acceptance of responsibility, and whether one of his prior convictions was improperly counted for career offender purposes. Petitioner was informed of the opportunity to file a *pro se* brief, but did not do so. After Petitioner filed his appeal, the Supreme Court decided Honeycutt v. United States, 137 S.Ct. 1626, 1631-32 (2017), holding that a defendant may not be held jointly and severally liable under 21 U.S.C. § 853 for property that his coconspirator derived from the crime, but that the defendant did not acquire. On June 15, 2018, the Fourth Circuit granted the Government's unopposed motion to remand the criminal money judgment and the affirmed the judgment of conviction. United States v. Williams, 736 F. App'x 389 (4th Cir. 2018).

On June 25, 2018, counsel for Petitioner filed a Petition for Rehearing asking the Fourth Circuit to consider, based on new case law, whether the § 846 conviction in Count One is a controlled substance offense for purposes of the career offender enhancement. (Case No. 17-4352, Doc. No. 50). The Fourth Circuit granted rehearing. On May 9, 2019, the Fourth Circuit held: it was not plain error to sentence Petitioner as a career offender; it was not clear error for the Court to refuse an additional one-level reduction for timely acceptance or responsibility; and Petitioner had two prior controlled substance offenses that counted separately towards his criminal history category for purposes of his career offender status. The Fourth Circuit granted the Government's unopposed motion to remand, vacate the criminal money judgment, and remanded the case for further proceedings on forfeiture. United States v. Williams, 772 F. App'x 37 (4th Cir. 2019). Petitioner did not file a petition for writ of certiorari in the U.S. Supreme Court.

On remand, the Government filed a Notice of Intent to Forego Forfeiture on May 18, 2020, (CR Doc. No. 152), and the Court vacated the money judgment of forfeiture on May 29, 2020.

Petitioner filed the instant § 2255 Motion to Vacate on February 21, 2021.[1] (Doc. No. 1).

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings). Petitioner had previously filed a § 2255 Motion to Vacate while the direct appeal

6

He argues that:[2] (1) he was erroneously sentenced as a career offender, which resulted in a complete miscarriage of justice; (2) trial counsel provided ineffective assistance with regards to sentencing; (3) appellate counsel provided ineffective assistance on direct appeal. Petitioner appears to acknowledge that the § 2255 Motion to Vacate was not timely filed, however, he argues that he is entitled to equitable tolling. Petitioner seeks resentencing without the career offender enhancement.

The Government filed a Motion to Dismiss the § 2255 Motion to Vacate, arguing that it is untimely, his assertions of error in applying the advisory Sentencing Guidelines are not cognizable on collateral review, and he cannot show deficient performance by counsel or prejudice. (Doc. No. 3). The Court informed Petitioner of his right to respond to the Motion to Dismiss in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Doc. No. 4). Petitioner filed a Response in which he: argues that he is entitled to equitable tolling; asks the Court to deny the Government's Motion to Dismiss; and requests an evidentiary hearing. (Doc. No. 9).

**II. SECTION 2255 STANDARD OF REVIEW**

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to

---

was pending, case no. 3:18-cv-145. However, that proceeding was dismissed without prejudice as premature on April 24, 2018.

[2] The claims have been liberally construed and restated.

any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

**(A)** **Statute of Limitations**

The § 2255 Motion to Vacate is subject to dismissal with prejudice as time-barred.  A one-year statute of limitation applies to motions to vacate under § 2255, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

An otherwise time-barred petition is entitled to equitable tolling in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party." Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)); United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000)("§ 2255's limitation period is subject to equitable modifications such as tolling."). Equitable tolling of petitions for collateral review is available only when the petitioner demonstrates "(1) the has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S 631, 649 (2010); see Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking

equitable tolling bears the burden of establishing two elements.").

The Judgment became final on August 7, 2019 when the 90-day period to seek certiorari review of the Fourth Circuit's May 9, 2019 opinion on rehearing expired. See Gonzalez v. Thaler, 565 U.S. 134, 149 (2012); Clay v. United States, 537 U.S. 522, 532 (2003); Rule 13, Rules of the Supreme Court of the United States. Plaintiff therefore had until August 7, 2020 to file a timely § 2255 petition. The instant § 2255 Motion to Vacate was filed on February 21, 2021, more than six months late.

Any suggestion that the Court's May 29, 2020 vacatur of the forfeiture judgment restarted the § 2255 one-year statute of limitations is rejected. As previously noted, Petitioner's conviction and sentence of imprisonment became final on August 7, 2019 when Petitioner failed to challenge the Fourth Circuit's affirmance of his conviction and sentence on direct appeal. The vacatur of the forfeiture order did not affect the conviction or sentence of imprisonment in any way, and did not provide Petitioner with any post-conviction rights. See generally United States v. Hudgins, 201 F. App'x 142, 143 (4th Cir. 2006) ("[A] § 2255 motion may not be used for the sole purpose of challenging fines or restitution orders…."); Krol v. United States, 2020 WL 1498876, at *6 (E.D.N.C. Jan. 23, 2020), *report and recommendation adopted*, 2020 LW 1492802 (E.D.N.C. March 24, 2020) ("In a § 2255 motion, a petitioner may only attack terms of incarceration, not fines, restitution orders, or forfeiture orders."). It would not make sense to find that the Court's vacatur of the forfeiture order restarted § 2255's statute of limitations under these circumstances.[3]

---

[3] The Court notes that a related question – whether an amended judgment setting the amount of restitution re-starts the one-year statute of limitations for filing a § 2255 petition – is unsettled. See generally Dolan v. United States, 560 U.S. 605, 618 (2010) (declining to decide whether a judgment that imposes a period of incarceration and an unspecified amount of restitution is 'final' for appellate purposes). The Ninth Circuit has found that the § 2255 statute of limitations does not restart when the specific amount of restitution is later entered, reasoning that, "[b]ecause [petitioner] is not permitted to challenge his restitution with a § 2255 motion, it would make no sense to let him restart the statute of limitations under § 2255 from an amended judgment that addressed only the specific amount of restitution." United States v. Gilbert, 807 F.3d 1197, 1199-1200 (9th Cir. 2015).

Petitioner argues that the Court should equitably toll the one-year statute of limitations. He contends that: he did think his conviction and sentence would become "final" for purposes of § 2255 until the forfeiture issue was resolved on remand; it would be unjust to time-bar this § 2255 Motion to Vacate because his first § 2255 petition was filed too early; prison transfers and COVID-19 restrictions prevented him from filing his § 2255 Motion to Vacate sooner; and the career offender sentence and violations of his Fifth and Sixth Amendment rights have resulted in a miscarriage of justice.

Petitioner's first two arguments are variations on the same theme – that he did not understand how the § 2255 statute of limitations operated in his case. However, "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).

Petitioner's third argument is that circumstances outside of Petitioner's control prevented him from filing his § 2255 Motion to Vacate sooner. First, he claims to have spent an "extended time in transit" following the May 29, 2020 vacatur of the forfeiture order. (Doc. No. 1-1 at 19). By the time of the May 29 vacatur, nearly 10 months of the one-year statute of limitations had run. Petitioner fails to explain how much time he spent in transit, when the "extended time" in transit ended, or why it took him more than eight more months to file the instant § 2255 Motion to Vacate. Second, Petitioner argues that his § 2255 filing was frustrated by modified prison operations pursuant to COVID-19 including multiple long-term lockdowns that deprived him of access to the law library, email, and telephones. (Doc. No. 1-1 at 19). As a preliminary matter, the Court notes that the one-year statute of limitations for filing a § 2255 petition began running in August 2019, long before COVID-19 began impacting the United States. Plaintiff fails to allege when restrictions on his email, telephone, and library access began; how long the restrictions lasted; or

how the restrictions prevented him from timely filing his § 2255 Motion to Vacate. Petitioner has thus failed to carry his burden of demonstrating that he was precluded by extraordinary circumstances from timely filing his § 2255 Motion to Vacate.

Finally, Petitioner appears to argue that the Court should not time-bar his § 2255 claims because such would result in a miscarriage of justice. The Supreme Court has recognized a "fundamental miscarriage of justice exception" that allows a prisoner to pursue his constitutional post-conviction claims on the merits notwithstanding the existence of a procedural bar, upon a showing of actual innocence. See generally McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (addressing 28 U.S.C. § 2254) (quoting Hererra v. Collins, 506 U.S. 390, 404 (1993)); Bousley v. United States, 523 U.S. 614, 623 (1998) (in the § 2255 context, actual innocence may overcome procedural default). The exception applies only in the limited circumstance where new reliable evidence shows that it is more likely than not that no reasonable juror would have convicted the petitioner. Petitioner makes no such showing here, and accordingly, Petitioner's apparent reliance on the fundamental miscarriage of justice exception is rejected.[4]

Petitioner failed to timely file his § 2255 Motion to Vacate and he has failed to establish that any exception applies. Therefore, the § 2255 Motion to Vacate is subject to dismissal with prejudice as time-barred. Even if the § 2255 Motion to Vacate were timely filed, however, it would be denied on the merits.

**(B)** **Merits**

    **(1)** **Career Offender Sentence**

Petitioner contends that he was erroneously sentenced as a career offender, which resulted in a complete miscarriage of justice.

---

[4] For the same reasons, § 2255(f)(4) does not apply.

11

A sentencing error is not cognizable on § 2255 review unless it is constitutional, jurisdictional, or amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974). Barring "extraordinary circumstances, ... an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999); United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999) ("misapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice."). This includes an error with regards to a career offender designation that is applied under an advisory guideline scheme. See United States v. Foote, 784 F.3d 931, 936 (4th Cir. 2015).

Petitioner was sentenced as a career offender to 292 months' imprisonment for Count One and 240 months for Count Two. These sentences do not exceed the statutory maximum of life imprisonment for Count One and 20 years' imprisonment for Count Two.

Petitioner argues, pursuant to United States v. Newbold, 791 F.3d 455 (4th Cir. 2015), that his sentencing as a career offender is a fundamental defect that resulted in a complete miscarriage of justice. In Newbold, the Fourth Circuit granted § 2255 relief on a sentence under the Armed Career Criminal Act ("ACCA"). However, unlike the advisory career offender guideline enhancement under which Petitioner was sentenced, the ACCA sentence in Newbold was applied pursuant to a statute and resulted in a sentence above the statutory maximum. Newbold is therefore inapplicable to the instant case and Petitioner's challenge to the application of the advisory career offender sentencing enhancement is not cognizable in this § 2255 proceeding.

Moreover, the Fourth Circuit considered and rejected Petitioner's career offender challenge on direct appeal, and therefore, the Court would not reconsider it in the instant proceeding even if it were a cognizable § 2255 claim. See United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir.

2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]"). Accordingly, this claim is dismissed.[5]

### (2) Ineffective Assistance of Trial Counsel

Petitioner contends that counsel provided ineffective assistance at sentencing by failing to timely assert a PSR objection to the career offender enhancement, and by failing to articulate the basis for the career offender objection, *i.e.*, that a § 846 conspiracy is not categorically a controlled substance offense. Petitioner argues that there is a reasonable probability that the Court would have sustained the career offender objection had counsel raised it, which would have reduced the advisory sentencing range.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th

---

[5] The Court will not address the Government's alternative argument that this claim is procedurally defaulted in the interest of judicial economy. See (Doc. No. 3 at 10, n.3).

Cir. 1999) (quoting Strickland, 466 U.S. at 694).

"To avoid the distorting effects of hindsight, claims under Strickland's performance prong are 'evaluated in light of the available authority at the time of counsel's allegedly deficient performance.'" United States v. Morris, 917 F.3d 818, 823 (4th Cir. 2019) (quoting United States v. Carthorne, 878 F.3d 458, 466 (4th Cir. 2017)). Counsel "must raise a material objection or argument if 'there is relevant authority strongly suggesting' that it is warranted." Id. at 824 (quoting Carthorne, 878 F.3d at 469). A lawyer does not provide deficient representation by "failing to bring novel or long-shot contentions," United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014), or "by failing to anticipate changes in the law, or to argue for an extension of precedent." Morris, 917 F.3d at 823; see Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995) ("the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law.").

Petitioner was sentenced pursuant to the career offender guideline enhancement. A defendant is a career offender if: (1) he was at least 18 years old at the time he committed the instant offense of conviction; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a) (2015). A "controlled substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, export, distribution, or dispensing of a controlled substance … or the possession of a controlled substance … with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b) (2015). A "crime of violence" or "controlled substance offense" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2, app. note 1

(2015).

Petitioner's career offender designation was based on Count One, a violation of 21 U.S.C. § 846, which prohibits attempt and conspiracy to commit any offense defined in Subchapter 1 of Chapter 13, governing drug abuse prevention and control. On March 20, 2018, the Fourth Circuit held in United States v. McCollum, 885 F.3d 300 (4th Cir. 2018), that "an overt act is an element of the generic definition of conspiracy" as incorporated into § 4B1.2. Id. at 308 (finding that conspiracy to commit murder in aid of racketeering is not a crime of violence under § 4B1.2). On August 15 2019, the Fourth Circuit applied the categorical approach and McCollum to determine in United States v. Norman, 935 F.3d 232 (4th Cir. 2019) that a § 846 conspiracy "criminalizes a broader range of conduct than that covered by generic conspiracy," and therefore, does not qualify as a controlled substance offense under § 4B1.2. Id. at 237-38.

Petitioner presently argues that counsel was ineffective at sentencing for failing to argue that the § 846 conviction in Count One does not support the career offender enhancement pursuant to McCollum and Norman. If Petitioner were sentenced today, he would not qualify as a career offender. However, Petitioner was sentenced in May 2017, long before McCollum and Norman were issued. It is not enough for purposes of demonstrating ineffective assistance of counsel for Petitioner to show merely that the law has changed. Petitioner has failed to come forward with any relevant authority at the time of his sentencing that strongly suggested his argument that § 846 conspiracy is not a career offender predicate. The Fourth Circuit has indicated the opposite, noting that the case law prior to Norman's issuance "sufficiently muddied the water" such that the § 846 career offender error in Norman was not plain. See Norman, 935 F.3d at 241-42. Petitioner has also failed to establish prejudice. There is no reasonable probability that the Court would have granted relief on a § 846 career offender objection had counsel raised it at sentencing, based on

the Sentencing Guidelines application note's inclusion of conspiracy as a controlled substance offense, and caselaw at the time. See United States v. Kennedy, 32 F.3d 876 (4th Cir. 1994) (holding that "a drug conspiracy conviction may serve as the 'instant offense' supporting a career offender status enhancement under § 4B1.1…."); United States v. Brandon, 363 F.3d 341 (4th Cir. 2004) (treating drug conspiracy as a controlled substance offense under § 4B1.1); U.S.S.G. § 4B1.2, app. note 1 (2015).

Petitioner's claim of ineffective assistance of trial counsel would therefore be denied on the merits if it had been timely raised.

### (3) **Ineffective Assistance of Appellate Counsel**

Finally, Petitioner contends that appellate counsel was ineffective for failing to challenge Petitioner's career offender sentence on direct appeal because a § 846 violation does not categorically qualify as a controlled substance offense. Petitioner argues that there is a reasonable probability that the Fourth Circuit would have remanded for resentencing without the career offender enhancement had counsel presented this claim on direct appeal.

The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate

16

counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." Mason, 774 F.3d at 828-29. "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal … with the strength of the arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

Petitioner's claim that trial counsel was ineffective for failing to raise the § 846 career offender challenge is meritless. Counsel initially filed an Anders brief on direct appeal on September 19, 2017, before McCollum and Norman were issued. (Case No. 17-4352, Doc. No. 16). Appellate counsel was not ineffective for failing to predict changes in the law and include the § 846 career offender challenge in the initial brief. See Section (2), *supra*. The Fourth Circuit issued its first opinion on Petitioner's direct appeal on June 15, 2018. Williams, 736 F. App'x 389.

On June 25, 2018, appellate counsel filed a Petition for Rehearing based on McCollum and United States v. Whitley, 737 F. App'x 147 (4th Cir. 2018), an unpublished opinion issued on June 12, 2018 in which the Fourth Circuit applied McCollum to find that prior § 846 conspiracy convictions could not support career offender sentencing because they are not categorically controlled substance offenses. (Case No. 17-4352, Doc. No. 50). The Fourth Circuit granted rehearing and reviewed Petitioner's § 846 career offender claim for plain error. The Fourth Circuit found that no plain error occurred "[b]ecause this court has repeatedly concluded that a § 846 drug

conspiracy is a controlled substance offense, and neither McCollum nor Whitley distinguished this court's precedent on the issue…." Williams, 722 F. App'x at 39. Counsel performed effectively by raising the § 846 career offender challenge pursuant to post-sentencing developments of the law. Assuming *arguendo* that counsel should have raised Whitley in the days between its issuance and the Fourth Circuit's initial opinion on direct appeal, this claim still fails because Petitioner cannot demonstrate prejudice. The Fourth circuit granted rehearing, considered the § 846 career offender challenge on the merits, and rejected it. Petitioner has failed to demonstrate a reasonable probability that the argument would have succeeded had counsel raised it sooner.

Accordingly, Petitioner's claim of ineffective assistance of appellate counsel would be denied on the merits if it had been timely filed.

### IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed with prejudice as time-barred and, alternatively, denied on the merits.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice and **DENIED**.

2. The Respondent's Motion to Dismiss, (Doc. No. 3), is **GRANTED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is

18

denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

4. The Clerk is instructed to close this case.

Signed: July 7, 2021

Frank D. Whitney
United States District Judge